IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

FRANCIS MORRISON,

    Plaintiff,

    v.

JO ANNE B. BARNHART,
Commissioner of Social Security,

    Defendant.

CIVIL ACTION

NO. 1:06-CV-53-GGB

## **FINAL ORDER**

This civil action is before the court on plaintiff Francis Morrison's request, pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3), for judicial review of the final decision of the Commissioner of Social Security denying his application for Supplemental Security Income ("SSI"). Plaintiff has also filed an Alternative Motion for Remand Under Sentence Six of 42 U.S.C. § 405(g) [Doc. 14].

Plaintiff applied for SSI benefits on May 10, 2002, claiming disability due to mental retardation. The Social Security Administration denied plaintiff's application initially and on reconsideration. Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), and one was held on July 30, 2003, followed by a supplemental hearing in March, 2004. On May 16, 2005, the ALJ issued a decision

denying plaintiff's claim.  Thereafter, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  Plaintiff has exhausted his administrative remedies, and this case is ripe for judicial review.

For the reasons stated below, the court finds that remand is required for reconsideration of plaintiff's claim in light of new evidence provided by plaintiff.

I.     **FACTS**

Plaintiff was 33 years old at the time of the Appeals Council decision.  He has not completed high school.  Plaintiff previously obtained SSI benefits, but lost them when he was convicted of a crime and incarcerated for more than a year.

A.     **Psychological Evidence**

In November 1994, in connection with plaintiff's original application for benefits, plaintiff was examined by Dick Maierhofer, Ph.D.  Dr. Maierhofer found that plaintiff had a verbal IQ score of 59, a performance IQ score of 52, and a full scale IQ of 53. (R. 218).  Dr. Maierhofer concluded that these scores were valid and that plaintiff was suffering from "mild intellectual retardation."  (R. 219-20).

2

Eight years later, plaintiff saw Dr. Maierhofer for a second psychological evaluation.  (R. 191).  Dr. Maierhofer arrived at similar IQ scores: 57 verbal, 52 performance, and 50 full scale.  (R. 194).  This time, however, he thought it "quite possible" that plaintiff was malingering and he estimated plaintiff's actual IQ to be between 60 and 75.  (R. 195-96).  Nevertheless, Dr. Maierhofer's diagnosis in 2002 was the same as in 1994: "mild intellectual retardation."  (R. 196).  He also concluded that plaintiff would have difficulty making "occupational adjustments," such as following work rules, maintaining adequate concentration, dealing with other workers and supervisors "because of his immaturity," handling work-related stress, following directions, and completing work in a timely manner.  (See id.).

The 2002 report contains no indication that Dr. Maierhofer had reviewed the 1994 report.  Furthermore, he did not have plaintiff's school records, showing a history of special education, which were not faxed to the ALJ until June 2004.  (R. 176).

### B.  New Evidence

After plaintiff filed this civil action, he obtained a letter from Dr. Maierhofer providing additional information.  (Doc. 11, Attachment).  Dr. Maierhofer wrote:

3

> In my professional opinion, Mr. Morrison does have a DSM-IV diagnosis of 317-Mild Intellectual Retardation. This is a life long condition that first showed up in childhood, and it is related to both his very limited cognitive skills and limited adaptive behaviors. His school records (which I did not have access to at the time of the testing) support his very poor intellectual skills.
>
> In retrospect, it now seems evident that all three of his WAIS-III scores would be in the 50-59 I.Q. range. He was seen as malingering on the orientation part of the [2002] interview, but not on the intellectual part of the testing.
>
> Because of his very poor cognitive skills, Mr. Morrison would not be able to handle sustained employment in my opinion.

(Doc. 11, Attachment).

### C. **Hearing Testimony**

Plaintiff testified that he had not finished the ninth grade, and had been in special education. (R. 33, 38). He stated that he had first received SSI in the late 1980s and that he had been incarcerated on three separate occasions. (R. 38). Since being released from prison in May 2002, plaintiff had lived with his mother. (R. 33).

During the first administrative hearing, the ALJ questioned a vocational expert ("VE") about plaintiff's ability to work. Much of this testimony could not be

4

transcribed because it was "inaudible." (See R. 41-43). The VE clearly testified, however, that an individual with the work-related limitations noted in Dr. Maierhofer's report would find it "very difficult . . . to maintain a job." (R. 43).

At the second administrative hearing, the only witness was Olin Hamrick, Ph.D., who testified as a psychological expert. Dr. Hamrick stated that the record contained insufficient information to render an opinion regarding retardation. He concluded that plaintiff's school records and, if available, his psychological or work records from his incarceration were needed. (See R. 52-53). The ALJ asked plaintiff's counsel to obtain these records, and he stated that he would "see that it's faxed immediately to Dr. Hamrick." (R. 56).

The ALJ received plaintiff's school records three months later. (R. 176). They show that plaintiff had been in special education, that he did not finish the ninth grade, and that he had to repeat kindergarten or first grade. (R. 179, 183). The ALJ apparently never sought further comment from Dr. Hamrick or Dr. Maierhofer.

### D.   ALJ's Findings

The ALJ found that plaintiff suffers from borderline intellectual functioning, which is a severe impairment. (R. 20). In his written opinion, the ALJ summarized Dr.

5

Maierhofer's 1994 and 2002 findings and focused on Dr. Maierhofer's statement, in his 2002 report, that plaintiff's IQ scores might be invalid.  (R. 20-22).  The ALJ did not mention Dr. Maierhofer's 1994 finding that plaintiff's IQ scores were valid. Furthermore, although the ALJ summarized the functional limitations Dr. Maierhofer found in 2002, he omitted the VE's testimony that these limitations would make it "very difficult for this individual to maintain a job."  (R. 24, 43).  The ALJ concluded that plaintiff could perform his past work as a construction laborer and was not disabled. (R. 25-26).

## II.     **DEFINITION OF "DISABILITY" AND STANDARD OF REVIEW**

An individual is considered disabled for purposes of disability benefits if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically accepted clinical or laboratory diagnostic techniques and must be of such severity that the plaintiff is not only unable to do her previous work, but cannot,

6

considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. 42 U.S.C. § 423 (d)(2),(3).

In reviewing the Commissioner's decision, this court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991). This court's only role is to determine whether the Commissioner applied the proper legal standards and whether substantial evidence exists in the record to support the Commissioner's findings. Walden v. Schweiker, 672 F.2d 835 (11th Cir. 1982); 42 U.S.C. § 405(g). Furthermore, only evidence submitted to the ALJ (as opposed to new evidence presented to this court or to the Appeals Council) may be considered when determining whether the ALJ's decision is supported by substantial evidence. Falge v. Apfel, 150 F.3d 1320, 1323 (11th Cir. 1998), cert. denied, 525 U.S. 1124, 119 S.Ct. 907, 142 L.Ed.2d 905 (1999).

In contrast to the Commissioner's findings of fact, no presumption of validity attaches to the Commissioner's application of the law. Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). "A determination that is supported by substantial evidence may

7

be meaningless . . . if it is coupled with or derived from faulty legal principles." Boyd v. Heckler, 704 F.2d 1207, 1209 (11th Cir. 1983).

## III. DISCUSSION

Plaintiff raises a number of arguments on appeal, the majority of which concern the ALJ's evaluation of Dr. Maierhofer's reports. (Doc. 11 at 12-18). As noted above, plaintiff filed an alternative motion for remand based on the acquisition of new probative evidence – Dr. Maierhofer's letter of September 18, 2006 explaining his position and resolving the inconsistencies in the two reports. The Commissioner did not file a response to plaintiff's motion, thereby indicating that she does not oppose it. See Local Rule 7.1, N.D.Ga. (providing that failure to respond to a motion shall indicate no opposition thereto).

Although this court may look only to evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence, new evidence may be considered to determine if remand is appropriate under Sentence Six of 42 U.S.C. § 405(g). Falge, 150 F.3d at 1323. Sentence Six authorizes this court to "order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good

cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). To obtain a sentence six remand, plaintiff must show that "(1) new, noncumlative evidence exits, (2) the evidence is material such that a reasonable possibility exists that the new evidence would change the administrative result, and (3) good cause exists for the applicant's failure to submit the evidence at the appropriate administrative level." Falge at 1323. The court finds that Dr. Maierhofer's recent letter is material and that good cause (its non-existence) is present for plaintiff's failure to provide it to the Commissioner.

## IV.  CONCLUSION

For the foregoing reasons, plaintiff's Motion for Remand Under Sentence Six [Doc. 14] is **GRANTED** and this action is **REMANDED** to the Commissioner of Social Security, pursuant to Sentence Six of 42 U.S.C. § 405(g), for reconsideration of plaintiff's claim in light of plaintiff's new evidence.

**IT IS SO ORDERED** this 9th day of January, 2007.

                                             /s/ Gerrilyn G. Brill
                                     GERRILYN G. BRILL
                                       UNITED STATES MAGISTRATE JUDGE

T:\FINAL.SS\Morrison--NewEvidence.wpd

AO 72A
(Rev.8/82)